UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

◇◇◇◇◇◇◇◇◇◇◇◇◇◇◇◇◇◇◇◇◇◇◇◇◇◇◇◇◇◇◇◇◇◇◇◇◇◇◇◇◇◇◇◇◇◇◇

**BERNARD BEAUDIN,**

                             **Plaintiff,**

                         **-v-**                                 **1:13-CV-671 (NAM/CFH)**

**POWER SERVICES COMPANY, LLC, and
AMENDED AND RESTATED POWER
SERVICES COMPANY SEVERANCE PAY
PLAN,**

                             **Defendants.**

◇◇◇◇◇◇◇◇◇◇◇◇◇◇◇◇◇◇◇◇◇◇◇◇◇◇◇◇◇◇◇◇◇◇◇◇◇◇◇◇◇◇◇◇◇◇◇

APPEARANCES:

Gleason, Dunn, Walsh & O'Shea
Ronald G. Dunn, Esq., of counsel
Bryan J. Huebner, Esq., of counsel
Daniel A. Jacobs, Esq., of counsel
40 Beaver Street
Albany, New York 12207

Moore & Van Allen PLLC
Alton L. Gwaltney, III, Esq., of counsel
John T. Floyd, Esq., of counsel
Scott M. Tyler, Esq., of counsel
100 N. Tryon Street, Suite 4700
Charlotte, North Carolina 28202-4003
Attorneys for Defendants

**Hon. Norman A. Mordue, Senior U.S. District Judge:**

## MEMORANDUM-DECISION AND ORDER

### INTRODUCTION

Plaintiff brings this action under the Employee Retirement Income Security Act of 1974

("ERISA"), 29 U.S.C. § 1001, *et seq.*, against his former employer, Power Services Company,

LLC ("PSC") and its employee benefit plan, Amended and Restated Power Services Company

Severance Pay Plan ("Plan"), to recover severance pay benefits allegedly owed to him under the

Plan. Defendants move (Dkt. No. 21) for summary judgment and attorney's fees. As explained below, the Court denies defendants' motion for summary judgment; reverses the June 28 and October 26, 2011 determinations denying benefits; remands the matter to the Plan Administrator for further proceedings; and dismisses the complaint without prejudice.

## BACKGROUND

Based on the complaint and affidavits submitted on this motion, it is undisputed that plaintiff was employed at the Selkirk Facility by PSC, the sponsor of the severance plan in issue, until August 22, 2010. On June 10, 2010, after being informed that non-party Power Plan Management Services ("PPMS") would be assuming the asset management responsibilities at the Selkirk Facility, and that when this occurred his employment with PSC would terminate, plaintiff applied for and signed an employment agreement with PPMS. On August 22, 2010, plaintiff's employment with PSC was terminated. On August 23, 2010, management of the Selkirk Facility was transferred to PPMS, and plaintiff began his employment there. On May 24, 2011, plaintiff applied to the Plan for severance benefits based upon his August 22, 2010 termination from PSC. The Plan Administrator denied his request on June 28, 2011. Plaintiff appealed, and the Review Committee denied the appeal on October 26, 2011. Plaintiff then brought this action. Defendants' motion for summary judgment is presently before the Court.

## THE PLAN

The Plan in question, adopted by PSC on September 24, 2003, provides in pertinent part:

> 2.1. The purpose of the Plan is to provide certain employees of the company and any affiliates ...with separation pay if they are separated from service with their employer for the reasons described herein[.]
> \*\*\*
> 3.2. A "Participant" for purposes of this Plan, is an Eligible Employee whose employment is terminated (a) by his or her Employer without "Cause" and such termination is unrelated to a "Change in Control" of the Employer (as

such terms are defined in Sections 4.2 and 4.3) or (ii) by his or her Employer without Cause in connection with a Change in Control of the Employer and the Eligible Employee does not receive a "Qualifying Offer" (as defined in Section 4.4 below) from the Employer or the Employer's successor; provided, however, that the following are NOT eligible for severance pay under this Plan:
> \*\*\*
>
> (h) an employee who receives a Qualifying Offer from his or her Employer, the Employer's successor, or from an Affiliate, whether or not the employee accepts such offer;
>
> (i) an employee who receives and accepts any offer of employment from his or her Employer, the Employer's successor, or from an Affiliate, even if such offer is not a Qualifying Offer[.]
>
> \*\*\*
>
> 4.3. "Change in Control" means (a) the Employer's sale of substantially all of its assets, in one or more transactions; or (b) a reorganization or merger of the Employer ... or any other arrangement or corporate reorganization, whereby control of the Employer's business is transferred to another employer.
>
> 4.4. "Qualifying Offer" means an offer of employment to an otherwise Eligible Employee that (a) provides for base salary and benefits that are, in the aggregate, similar in value to the base salary and benefits provided to such Eligible Employee immediately prior to the Change in Control[.]

The Plan defines the term "Employer" as PSC and any of its Affiliates that have adopted the Plan. It does not define the term "successor." The Plan further provides:

> 8.2. The Plan Administrator shall have such powers as are necessary to discharge its duties, including, but not limited to, interpretation and construction of the Plan, sole discretion to determine all questions of eligibility, participation and benefits and all other related or incidental matters. The Plan Administrator shall decide all such questions in accordance with the terms of the controlling legal documents and applicable law, and its decision will be binding on the applicable Employer, the Participant, the Participant's spouse or other dependent or beneficiary and all other interested parties.

## ADMINISTRATIVE DETERMINATIONS

Plaintiff applied to PSC for severance benefits on May 24, 2011. By letter addressed to plaintiff's counsel dated June 28, 2011, Warren MacGillivray on behalf of "Power Service Company, LLC, acting in its capacity as the Plan Administrator," wrote the following:

-3-

> On behalf of Power Service Company, LLC (PSC), acting in its capacity as the Plan Administrator of that certain Amended and Restated Power Services Company Severance Pay Plan (the Severance Plan), we are writing in response to your letter, dated May 24, 2011, regarding Mr. Bernard Beaudin. Pursuant to such letter, you apply for and request, on behalf of Mr. Beaudin, severance pay under the Severance Plan in connection with Mr. Beaudin's termination of employment by PSC effective with the pay period ending August 22, 2010 (the Termination). ...
>
> \*\*\*
>
> In our capacity as the Plan Administrator, we have reviewed Mr. Beaudin's claim for severance pay under the Severance Plan and we find that Mr. Beaudin is not eligible for any severance pay under the Severance Plan. Accordingly, we hereby deny Mr. Beaudin's claim for benefits under the Severance Plan. Our determination is based on the fact that, in connection with the Termination, Mr. Beaudin accepted an offer with Power Plant Management Services, LLC, which was retained by PSC to assume certain management, administrative and other services of the various facilities. This determination was made by the Plan Administrator on the basis of Section 3.2(i) of the Severance Plan.

On August 28, 2011, plaintiff appealed, writing:

> Your June 28, 2011 denial of benefits indicated that the determination was based on Plan Section 3.2(i). Beaudin did not receive an offer of employment from his Employer, the Employer's successor, or from an Affiliate; rather Beaudin accepted a discrete offer of post-termination employment with Power Plant Management Services, LLC. Our review of the Severance Plan reveals that Beaudin is entitled to a severance benefit since he neither engaged in conduct nor received a benefit that disqualified him from receiving Plan benefits.

On October 26, 2011, the Review Committee denied the appeal, stating:

> The Review Committee denies Mr. Beaudin's claim for benefits on the basis of Sections 3.2(h) and/or 3.2(i) of the Severance Plan. Prior to Mr. Beaudin's termination of employment from Power Services Company ("PSC"), Mr. Beaudin received and accepted an offer of employment with Power Plant Management Services, LLC ("PPMS"), a management services company retained by PSC. Such employment with PPMS became effective concurrently with his termination from PSC, and provided for base salary and benefits that were, in the aggregate, similar in value to the base salary and benefits provided to Mr. Beaudin during his employment at PSC. Such offer of employment was arranged by PSC.
>
> While each of the aforementioned sections refers to a "successor" of the

> Employer, such term is not defined under the Severance Plan. Pursuant to Section 8.2 of the Severance Plan, the Plan Administrator (which includes the Review Committee) has such powers as are necessary to discharge its duties, including but not limited to, interpretation and construction of the Severance Plan and sole discretion to determine all questions of eligibility, participation and benefits under the Severance Plan. Such provision also provides that the Plan Administrator's decisions under the Severance Plan are binding on all parties. Pursuant to such authority, the Review Committee has determined that PPMS is a successor of PSC for purposes of Sections 3.2(h) and 3.2(i) of the Severance Plan. The Review Committee reached this conclusion based on an analysis of the intent and purpose of Sections 3.2(h) and 3.2(i) of the Severance Plan. Such provisions were incorporated into the Severance Plan to exclude from severance eligibility any individual who may have suffered a technical termination of employment but who suffered no loss of employment because he effectively continued to be employed. This is exactly the situation that existed in connection with Mr. Beaudin's termination from PSC: Mr. Beaudin received and accepted an offer to work for and be compensated by PPMS, PSC's designated management services company, and he suffered no loss of employment for which a severance payment is necessary to make him whole.

Again, the determination was signed by Warren MacGillivray on behalf of "Power Service Company, LLC, acting in its capacity as the Plan Administrator." There is no indication that the Plan Administrator considered any evidence other than the Plan document itself.

**THE MOTION**

Defendants move for summary judgment dismissing the complaint. Defendants contend: "Section 3.2(i) of the Plan excludes from benefit eligibility any PSC employee who received and accepted an offer of employment from a successor of PSC. Plaintiff received and accepted an offer of employment from PSC's successor – PPMS." In support of their argument that PPMS is PSC's successor within the meaning of the Plan, defendants assert, based on an affidavit from James Ryan, general manager of the Selkirk Facility since November 30, 2009, that both before and after the transition from PSC to PPMS, plaintiff held the same position, *i.e.*, Environmental Manager of the Selkirk Facility; that he had the same work responsibilities, office, desk, and

coworkers; that the same benefits were available to him; that the transition did not result in any change in the management team, machinery, computer systems, computer software, office assignments, desk assignments, or work responsibilities for any employees at the facility; that PPMS continued to provide the same asset management services at the Selkirk Facility that were previously provided by PSC; that the transition did not cause any management employee to be out of work for even a single day; and that the day after their termination by PSC on August 22, 2010, every management employee of the Selkirk Facility became employed by PPMS. Defendants further state that PSC does not continue to exist in an active role. Defendants argue:

> There is no dispute between the Parties that the Plan granted the Plan Administrator and the Review Committee authority to interpret the terms of the Plan, including the meaning of the term "successor." Thus, the only issue before the Court is whether the interpretation of the term "successor" by the Plan Administrator and Review Committee was arbitrary and capricious, meaning that PPMS should not have qualified as a successor under section 3.2(i) of the Plan; it was not.

In opposition, plaintiff takes the position that PPMS is not a successor to PSC within the meaning of the Plan, and that therefore he was entitled to severance pay upon the termination of his employment with PSC on August 22, 2010. Plaintiff states in his affidavit in opposition to this motion: "PPMS is a separate and distinct company from PSC. Since they do not have a Severance Plan, when I went to work for PPMS I immediately had a decrease in my salary and benefits because I was no longer entitled to receive the severance plan benefits agreed upon by PSC as part of my employment." He continues: "[M]y job, work location, work responsibilities, co-workers, supervisor and work equipment changed dramatically once I became employed by PPMS. The job responsibilities I had at Selkirk were also assigned to others." According to plaintiff, PPMS has "separate management, separate corporate organization and governance, and separate ownership." He submits a number of documents in support of these allegations.

-6-

Plaintiff's affidavit continues:

> 8) As part of the PPMS employment agreement, Plaintiff's service date with PSC, which extended back to June 1, 1991, was not transferred to PPMS and provided no additional benefits as compared with other new hire employees who had not previously worked for PSC. As a result I did not receive an employment offer of base salary and benefits that in aggregate were similar in value to those provided by PSC.
>
> 9) As part of the PPMS Employment Agreement, I was required: to apply for "at-will" employment, to complete a 1-9 form, to undergo a background screening, and to undergo drug testing, in the same manner as other new hire employees who had not previously worked for PSC.

Plaintiff also relies on the "Project Administrative Services Subcontract" ("Subcontract") dated August 23, 2010 between PSC and PPMS, which he contends demonstrates that PPMS is "neither a successor nor an affiliate of PSC [but rather] is an independent contractor with specific tasks for a specific term and with limited authority." Plaintiff contends that PSC continued to exist in an active role as an entity distinct from PPMS, and that, at the end of the five-year term of the Subcontract, all of PPMS' "limited authority reverts back to PSC." The Subcontract refers to PSC as "Company" and PPMS as "Manager" and includes the following provision:

> 15.14. Status of Manager. Manager at all times shall be deemed an independent contractor and neither it nor any of its employees nor any Subcontractor or any employees of any Subcontractor shall be considered to be an agent, servant, employee or representative of Company except to the extent of the agency created hereunder pursuant to Section 2.1.

Section 2.1 provides:

> 2.1. Appointment as Manager. Upon and subject to the terms and conditions of this Agreement, Company hereby appoints and retains Manager to serve as agent for Company in the management of the Day-to-Day affairs of Company..., and Manager hereby accepts such appointment and agrees to act in accordance with the provisions of this Agreement.

The Subcontract also provides:

> 2.3. Company's Right to Direct Manager. All actions of Manager undertaken pursuant to this Agreement shall be subject to the exclusive direction of

-7-

> Company....
>
> 3.3. Manager's Right to Request Instructions from Company. Manager may, at any time, if it reasonably deems it to be necessary or appropriate, request written instructions from Company with respect to any matter contemplated by this Agreement and may defer action thereon pending the receipt of such written instructions. ...
>
> 9.3.3 Rights upon Termination. Upon any expiration or termination of this Agreement, Manager shall deliver to Company at Company's principal place of business or such other location as Company may direct, all records, documents, accounts, files and other materials of Company[.]

## APPLICABLE LAW

It is well established that where "the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan[,]" challenges to benefit eligibility determinations are reviewed under the arbitrary and capricious standard. *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). The Second Circuit explains:

> Under the arbitrary and capricious standard, the scope of judicial review is narrow. A court may overturn a plan administrator's decision to deny benefits only if the decision was without reason, unsupported by substantial evidence or erroneous as a matter of law. Substantial evidence is such evidence that a reasonable mind might accept as adequate to support the conclusion reached by the administrator and requires more than a scintilla but less than a preponderance.

*Celardo v. GNY Automobile Dealers Health & Welfare Trust*, 318 F.3d 142, 146 (2d Cir. 2003) (citations, alterations, and internal quotation marks omitted); *accord Frommert v. Conkright*, 738 F.3d 522, 529-30 (2d Cir. 2013) (citation and quotation marks omitted).

In *Metropolitan Life Ins. Co. v. Glenn*, the Supreme Court recognized that a conflict of interest exists when a plan administrator both evaluates claims for benefits and pays benefits claims. 554 U.S. 105, 112 (2008). Where a benefit plan gives discretion to a plan administrator

-8-

who is operating under a conflict of interest, that conflict must be weighed as a factor in determining whether there is an abuse of discretion. *See Firestone*, 489 U.S. at 115. "The weight given to the existence of the conflict of interest will change according to the evidence presented." *McCauley v. First Unum Life Ins. Co.*, 551 F.3d 126, 133 (2d Cir. 2008).

"[A] district court's review under the arbitrary and capricious standard is limited to the administrative record." *Miller v. United Welfare Fund*, 72 F.3d 1066, 1071 (2d Cir. 1995); *accord Casagrande v. Siemens Corp.*, 556 F.3d 54, 56 (2d Cir. 2014). Therefore, if a court concludes that a benefits denial is arbitrary and capricious, "it must remand to the [administrator or fiduciary] with instructions to consider additional evidence unless no new evidence could produce a reasonable conclusion permitting denial of the claim or remand would otherwise be a useless formality." *Miller*, 72 F.3d at 1071 (citations and quotation marks omitted). "This rule is consistent with the fact that nothing in the legislative history suggests that Congress intended that federal district courts would function as substitute plan administrators[.]" *Id.* (citation and quotation marks omitted).

## DISCUSSION

In the case at bar, it is undisputed that section 8.2 of the Plan gives the administrator the authority to interpret and construe the Plan as well as "sole discretion to determine all questions of eligibility, participation and benefits and all other related or incidental matters." Therefore, under *Firestone*, the Court reviews the denial of plaintiff's application for severance benefits under the arbitrary and capricious standard. In addition, both the initial denial and the denial on appeal were signed by Warren MacGillivray on behalf of "Power Service Company, LLC, acting in its capacity as the Plan Administrator." Thus, it appears that PSC both evaluates claims for benefits and pays benefits claims, thereby presenting a conflict of interest.

On their motion for summary judgment, defendants have abandoned any reliance on section 3.2(h) of the Plan; therefore, the Court considers only the denial of benefits under section 3.2(i), which provides that "an employee who receives and accepts any offer of employment from his or her Employer, the Employer's successor, or from an Affiliate" is not eligible for severance benefits. Neither the June 28, 2011 benefits denial nor the October 26, 2011 denial of the appeal referred to any record evidence regarding the relationship between PSC and PPMS. The June 28, 2011 denial simply cited to section 3.2(i) and stated that "in connection with the Termination, Mr. Beaudin accepted an offer with Power Plant Management Services, LLC, which was retained by PSC to assume certain management, administrative and other services of the various facilities." In his appeal, plaintiff contended that he "did not receive an offer of employment from his Employer, the Employer's successor, or from an Affiliate; rather [he] accepted a discrete offer of post-termination employment with Power Plant Management Services, LLC." The Review Committee's October 26, 2011 denial of the appeal stated that plaintiff's employment with PPMS "became effective concurrently with his termination from PSC, and provided for base salary and benefits that were, in the aggregate, similar in value to the base salary and benefits provided to Mr. Beaudin during his employment at PSC." After noting that the Plan did not define "successor," the Review Committee found that "PPMS was a successor of PSC for purposes of section[] 3.2(i)." It stated that it reached this conclusion "based on an analysis of the intent and purpose" of those sections. The Review Committee explained:

> Such provisions were incorporated into the Severance Plan to exclude from severance eligibility any individual who may have suffered a technical termination of employment but who suffered no loss of employment because he effectively continued to be employed. This is exactly the situation that existed in connection with Mr. Beaudin's termination from PSC: Mr. Beaudin received and accepted an offer to work for and be compensated by PPMS, PSC's designated management services company, and he suffered no loss of

-10-

employment for which a severance payment is necessary to make him whole.

There is nothing in the administrative decisions to indicate that there was any administrative record other than the Plan itself.  In particular, in characterizing plaintiff's employment relationship with PPMS and PSC and the relationship between the two companies, neither administrative decision cites any evidence.  Rather, the findings appear to be based solely on factors outside the administrative record.  For example, there is no indication that the administrative record contained any evidence supporting the findings that PPMS was a "successor" of PSC or that plaintiff's base salary and benefits at PPMS were "similar in value" to those he received at PSC.  As a matter of law, the Plan Administrator's determination is unsupported by substantial evidence and thus is arbitrary and capricious.

The evidence submitted to this Court on the summary judgment motion (including the complaint; plaintiff's answers to defendants' requests for admissions; defendants' responses to plaintiff's interrogatories; the affidavits, all of which post-date the Review Committee's determination; and the Subcontract between PSC and PPMS) cannot cure this defect, because there is no indication that any of this evidence was part of the administrative record.  This Court will not act as a "substitute plan administrator" by considering evidence that was not part of the administrative record.  *Miller*, 72 F.3d 1071.

Although the evidence on this motion, particularly the Subcontract, appears to favor plaintiff to some extent, it cannot be said that "no new evidence could produce a reasonable conclusion permitting denial of the claim or remand would otherwise be a useless formality." *Id.*; *accord Pepe v. Newspaper and Mail Deliverers'-Publishers' Pension Fund*, 559 F.3d 140, 149 (2d Cir. 2009).  Accordingly, the Court denies defendants' motion for summary judgment; reverses the June 28 and October 26, 2011 determinations denying benefits; remands the matter to

-11-

the Plan Administrator for further proceedings; and dismisses the complaint without prejudice.[1]

**CONCLUSION**

It is therefore

ORDERED that defendants' motion (Dkt. No. 21) for summary judgment and attorney's fees is denied; and it is further

ORDERED that the June 28 and October 26, 2011determinations denying benefits are reversed and the matter is remanded to the Plan Administrator for further proceedings; and it is further

ORDERED that the complaint is dismissed without prejudice.

IT IS SO ORDERED.

DATED: March 31, 2015
        Syracuse, NY

Norman A. Mordue
Senior U.S. District Judge

---

[1] In view of the Court's holding, there is no need to consider the existence of a conflict of interest as a factor in determining whether there was an abuse of discretion.